# UNITED STATES DISTRICT COURT
# NORTHEN DISTRIT OF ILLINOIS

| | |
|---|---|
| DARCUS CONWAY,<br><br>       Plaintiff,<br><br>v.<br><br>EQUIFAX INFORMATION SERVICES, LLC,<br><br>       Defendant. | Case No.: 1:22-cv-00696<br><br>**COMPLAINT AND**<br>**DEMAND FOR JURY TRIAL**<br><br> 1. **FCRA, 15 U.S.C. § 1681** *et seq.* |

  Plaintiff Darcus Conway, ("Plaintiff") through counsel, alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* against Defendant Equifax Information Services, LLC ("Equifax").

## I. INTRODUCTION

  1. Plaintiff's Complaint arises from violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* by the Defendant. Plaintiff contends Defendant failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer reports, and consequently reported inaccurate information about Plaintiff. "Consumer reports" under 15 U.S.C. § 1681a(d) include both credit file disclosures obtained directly by Plaintiff from the consumer reporting agencies and consumer reports obtained by third parties as a factor in establishing Plaintiff's eligibility for credit.

## II. JURISDICTION AND VENUE

2. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 because Plaintiff alleges violations of the FCRA, a federal law. *See* 15 U.S.C. § 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

3. Venue in the Northern District of Illinois is proper pursuant to 28 U.S.C. § 1391 because Defendant regularly transact business within this District, are otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## III. PARTIES

4. Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

5. Plaintiff is a natural person who resides in Chicago Heights, Illinois.

6. Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

7. Defendant Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Upon information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers in the form of consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties. Equifax's principal place of business is located at 1550 Peachtree Street NW, Atlanta, GA 30309. Equifax can be served through its agent for service of process, Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners, GA 30092.

8. During all times pertinent to this Complaint, Defendant was authorized to conduct business in the State of Illinois and conducted business in the State of Illinois on a routine and systematic basis.

9. Defendant regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties. Defendant regularly furnishes consumer reports to third parties for monetary compensation, fees, and other dues, using means and facilities of interstate commerce, and are therefore "consumer reporting agencies" as defined by 15 U.S.C. § 1681a(f) of the FCRA.

10. During all times pertinent to this Complaint, Defendant acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

11. Any violations by Defendant were not in good faith, were knowing, negligent, willful, and/or intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violation.

## IV.     FACTUAL BACKGROUND

12. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

13. The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

14. Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

15. The FCRA is intended to ensure consumer reporting agencies ("CRAs") exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to

privacy because CRAs have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

16. Defendant, one of the three major consumer reporting agencies (at times referred to collectively as "CRAs" and individually as a "CRA"), in the United States, regularly publishes and distributes credit information about Plaintiff and other consumers through the sale of consumer reports.

17. Defendant regularly obtains consumer bankruptcy information to include in consumer reports.

18. The diligence Defendant exercises in uncovering and recording consumer bankruptcy filings is not replicated in Defendant's subsequent reporting of bankruptcy discharges and their effect on consumers' debts.

19. Defendant's consumer reports generally contain the following information: (i) <u>Header/Identifying Information</u>: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) <u>Tradeline Information</u>: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) <u>Public Record Information</u>: this section typically includes public record information, such as bankruptcy filings; and (iv) <u>Credit Inquiries</u>: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

20. Defendant obtains consumer information from various sources. Some consumer information is sent directly to Defendant by furnishers, and other information is independently

gathered by Defendant from third party providers/vendors or repositories, like computerized reporting services like PACER and Lexis-Nexis.

21. Defendant regularly seeks out and procures consumer bankruptcy filing and discharge information, with the intention of including it in the consumer reports Defendant sells to third parties for a profit.

22. Defendant's unreasonable policies, procedures, and/or algorithms consistently fail to identify and update pre-bankruptcy debts as required by § 1681e(b).

23. Defendant knows the information it reports about consumers' bankruptcies is often inconsistent with public records, furnished/reported information, and/or information contained in its own files.

24. The majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like Defendant) to make lending decisions. Those institutions also use FICO Scores, and other proprietary third-party algorithms (or "scoring" models), including debt-to-income ratios, to interpret the information in a consumer's consumer report, which is based on the amount of reported debt, payment history, date of delinquencies contained in Defendant's reports.

25. The information Defendant includes in consumer reports contributes to a consumer's overall creditworthiness and determines their FICO Score(s).

26. FICO and other third-party algorithms use variables or "attributes" derived from a consumer report to calculate a person's "credit score," which is a direct reflection of their creditworthiness.

27. FICO Scores factor the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

    a. "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or missed. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist. The more severe, recent, and frequent late payments are, the lower a consumer's FICO Score will be.

    b. The "amount of debt" a consumer owes has a major impact on their credit score. When a CRA reports a debt as outstanding when it is in fact discharged, the CRA is indicating that a consumer's "amount of debt" is higher than it actually is, which will undoubtedly impact a consumer's credit score.

28. Lenders also consider a consumer's debt-to-income ratio (DTI) based on the total amount of debt reported by Defendant in its consumer reports. DTI compares the total amount a consumer owes to the total amount a consumer earns.

29. Defendant regularly provides information that allows lenders to calculate the "total amount of debt" a consumer owes based on the total debt reported by Defendant.

30. A consumer's income, however, is not included in their consumer report; only their amount of debt is.

31. Lenders consider a consumer's DTI when deciding whether to approve financing and the credit terms thereof.

32. The higher the amount of reported debt that a consumer has, or appears to have, the worse the consumer's DTI will be, and the more difficult it will be for a consumer to obtain credit and favorable credit terms (e.g., higher interest, lower credit limits).

33. Upon information and belief, a consumer report that is inaccurately reporting an account as discharged in bankruptcy when it was paid prior to filing bankruptcy suffers greater harm than if that account was accurately reporting as paid, was a charge off.

34. Defendant is well aware that the effect of a Discharge Order in a Chapter 7 Bankruptcy is that all statutorily dischargeable debts, other than those that have been reaffirmed or successfully challenged in an adversary proceeding court, are discharged; both such exceptions are rare and furthermore identified on the individual consumer's bankruptcy docket sheet.

35. Additionally, information indicating that a specific debt has not been discharged, but instead was reaffirmed or successfully challenged through an adversary proceeding, is retrieved from the same sources from which Defendant independently obtains consumer bankruptcy case information.

36. Defendant also receives information about account payoff, reaffirmations or other discharge exceptions directly from furnishers of account/tradeline information.

37. Defendant also knows that accounts that are paid off prior to a consumer's bankruptcy should not be reported as included and/or discharged in bankruptcy, regardless of whether the account was charged-off prior to the consumer's bankruptcy.

38. However, Defendant regularly reports inaccurate information about consumers after they receive a Discharge Order.

39. Rather than follow reasonable procedures to assure maximum possible accuracy, as required by the FCRA, Defendant frequently reports information regarding pre-bankruptcy debts based on incomplete or knowingly inaccurate information.

40. Defendant regularly publishes consumer information that conflicts with information: provided by data furnishers to Defendant, already included in Defendant's consumer files, contained in public records that Defendant regularly accesses, and/or sourced through Defendant's independent and voluntary efforts.

41. Defendant's unreasonable policies and procedures cause it to routinely report inaccurate and materially misleading information about consumers, including Plaintiff, who have been discharged from Chapter 7 Bankruptcy.

42. Defendant routinely reports inaccurate, and materially misleading information about consumers like Plaintiff, without verifying or updating the information as required by § 1681(e)(b), despite possessing information inconsistent with the reported information that establishes the reported information is inaccurate.

43. Defendant's unreasonable policies and procedures cause it to regularly report consumer information without verifying its accuracy.

44. Defendant's unreasonable policies, procedures and/or algorithms consistently fail to identify and update pre-bankruptcy debts as required by § 1681(e)(b).

45. Defendant knows the information it reports about consumers' bankruptcies is often inconsistent with public records, furnished/reported information, and/or information contained in Defendant's own files.

46. Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints against Defendant for its inaccurate consumer reporting following a Chapter 7 discharge.

47. Thus, Defendant is on continued notice of its inadequate post-bankruptcy reporting procedures, which cause Defendant to report inaccurate balances, account statuses, payment histories, and/or payment statuses.

*Allegations Specific to the Consumer Reporting of Plaintiff*

48. Plaintiff had an account with ASHRO (the "Account"), starting with 2262 and opened in January 2017, which predated Plaintiff's bankruptcy filing.

49. Plaintiff paid off the balance on the Account in or around 2017.

50. Plaintiff filed a "no asset" Chapter 7 Bankruptcy on or about March 26, 2021, in the United States Bankruptcy Court for the Northern District of Illinois (Case No. 21-03994).

51. Plaintiff received an Order of Discharge on or about July 29, 2021.

52. Upon information and belief, Defendant prepared one or more consumer reports concerning Plaintiff after Plaintiff was discharged from Chapter 7 Bankruptcy.

53. Defendant obtained notice of Plaintiff's bankruptcy discharge through its routine, independent collection of consumer information from third party vendors such as Lexis-Nexis, as well as from furnishers that provide data regarding the individual tradelines reported by Defendant in Plaintiff's consumer reports.

54. In Plaintiff's consumer reports, Defendant included the bankruptcy case number, court, filing date, and the fact that Plaintiff's bankruptcy had been discharged in the Public Records section of Plaintiff's consumer report.

55. Defendant also reported Plaintiff's credit history in individual "tradelines," including names of credit accounts, account numbers, account types, responsibility for the account (i.e., individual or joint accounts), the date the accounts were opened, statuses, and the dates of the last status update.

56. Defendant is aware that CRAs are generally required to report accounts included in a consumer's Chapter 7 bankruptcy with a status of "discharged through bankruptcy," and/or with a zero-dollar balance, unless a furnisher provides information showing that a specific debt was excluded from the discharge.

57. Defendant should have **only** reported Plaintiff's dischargeable, pre-petition debt as included in or discharged in Chapter 7 Bankruptcy, and/or with a zero-dollar balance.

58. Instead, Defendant inaccurately reported the Account as included in bankruptcy.

59. The Account was paid in full prior to Plaintiff's bankruptcy.

60. Defendant inaccurately reported the Account as included in bankruptcy.

61. However, the Account should have been reported as "paid, was a charge-off".

62. Defendant did not indicate that the Account was paid off prior to the bankruptcy, despite correctly reporting Plaintiff's bankruptcy in the public records section of Plaintiff's consumer report.

63. Defendant does not have reasonable procedures in place to detect pre-Chapter 7 debts which predate the filing of a bankruptcy but had been paid off prior to such filing.

64. Notably, the other national consumer reporting agencies Trans Union and Experian did not inaccurately report the Account like Defendant.

65. Upon information and belief, ASHRO furnished information to Defendant that indicated Plaintiff's Account had been paid in full after being charged off, but Defendant rejected or otherwise overrode the data it received.

66. Alternatively, upon information and belief, Defendant knew from past experiences that ASHRO furnished inaccurate information regarding paid off and discharged debts or, has historically failed to employ reasonable procedures to ensure it properly updates consumer debts after a Chapter 7 Bankruptcy.

67. Nevertheless, Defendant blindly relied on the information provided by ASHRO even though this information conflicted with or was contradicted by information contained in Defendant's records, as well as Defendant's knowledge regarding Plaintiff's bankruptcy and discharge.

68. Defendant's reliance on the furnisher, ASHRO, was therefore unreasonable.

69. Defendant inaccurately reported that Plaintiff's debt was discharged in bankruptcy and reported inaccurate account statuses and/or payment histories.

70. Defendant inaccurately reported the Account as discharged in Chapter 7 Bankruptcy when in fact the Account was paid off after being charged off.

71. Defendant failed to indicate that the Account was paid prior to the bankruptcy, and instead inaccurately reported this as included/discharged in Chapter 7 Bankruptcy,

72. Defendant's reporting of the Account is patently false/incorrect and therefore inaccurate.

73. If not patently false/incorrect, Defendant's reporting of the Account is materially misleading and therefore inaccurate.

*Plaintiff's Damages*

74. Upon information and belief, had Defendant accurately reported the Account with the correct payment status, instead of as included in bankruptcy, Plaintiff's credit scores and creditworthiness would have been better.

75. Upon information and belief, after Plaintiff's bankruptcy discharge, Plaintiff applied for credit opportunities Capital One Auto Finance and was denied due to Defendant's inaccurate reporting.

76. Defendant's inaccurate reporting of the Account, along with additional information belonging to Plaintiff, was published to Capital One Auto Financing by Defendant during the process of Plaintiff's credit application.

77. As a direct result of Defendant's inaccurate reporting, Plaintiff suffers damages, including a decreased credit score, lower overall creditworthiness, and other financial harm.

78. Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, loss of sleep, reputational harm, violation of privacy, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

## V. COUNT I

**Violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681e(b)**

79. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

80. The FCRA requires CRAs, like Defendant, to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information. 15 U.S.C. § 1681e(b).

81. Defendant negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of Plaintiff's consumer information pertaining to pre-bankruptcy debts after a consumer Plaintiff received a Discharge Order.

82. Defendant independently sought information about Plaintiff's bankruptcy filing and discharge and voluntarily reported the same in Plaintiff's consumer reports.

83. When Defendant procured and published Plaintiff's bankruptcy information, it had an obligation to ensure it followed reasonable procedures to report the bankruptcy discharge and its effect(s) with maximal accuracy.

84. Defendant knew or should have known that the effect of a Discharge Order in a no asset Chapter 7 Bankruptcy is to discharge all statutorily dischargeable debts, not previously paid off debts.

85. These obligations are well established by the plain language of the FCRA, in promulgated by the Federal Trade Commission, detailed in case law, and evidenced in prior cases involving Defendant from which Defendant is on notice of its unreasonable procedures concerning the reporting of discharged and non-discharged debts.

86. Additionally, Defendant possesses or can easily obtain substantial written materials that detail CRA's duties and obligations under the FCRA, including those that apply when consumers file for Chapter 7 Bankruptcy.

87. Despite knowledge of these legal obligations, Defendant willfully and consciously breached its known duties and deprived Plaintiff of Plaintiff's rights under the FCRA.

88. In this case, Defendant inaccurately reported accounts that Defendant knew were paid prior to Plaintiff's Chapter 7 Bankruptcy, and not included or discharged by Plaintiff's bankruptcy discharge.

89. Defendant had actual knowledge of Plaintiff's bankruptcy and Discharge Order, as evidenced by the information it published in Plaintiff's consumer reports, including Plaintiff's bankruptcy case number, court, date of filing and date of discharge.

90. Defendant received notice of Plaintiff's bankruptcy discharge through public records, its own files, and information provided by data furnishers.

91. Defendant knows that non discharged debts should not be reported as included in bankruptcy.

92. Yet in this case, Defendant reported the Account, which was paid off prior to Plaintiff's bankruptcy, as an "included in bankruptcy" account.

93. Defendant violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiff's credit file/consumer report.

94. Defendant also violated 15 U.S.C. § 1681e(b) by failing to report accurate information when Defendant knew or should have known the information it was reporting is inaccurate, and/or otherwise contradicted by information known by Defendant, reported to Defendant, and reasonably available to Defendant.

95. Defendant's violations of 15 U.S.C. § 1681e(b) were willful.

96. Alternatively, Defendant's violations of 15 U.S.C. § 1681e(b) were negligent.

97. Defendant's inaccurate reporting damaged Plaintiff's creditworthiness.

98. Plaintiff suffers actual damages, including a decreased credit score, loss of credit opportunities, credit denial, and other financial harm caused by Defendant inaccurately reporting a balance for a debt that was paid off prior to Plaintiff obtaining a discharge in bankruptcy, and reporting that the Account was discharged in bankruptcy.

99. Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, stress, loss of sleep, anger, frustration, shock, embarrassment, and anxiety.

100. Defendant is a direct and proximate cause of Plaintiff's damages.

101. Defendant is a substantial factor in Plaintiff's damages.

102. Therefore, Defendant is liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 *et seq*.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against Defendant for the following:

(a) Declaratory judgment that Defendant violated the FCRA, 15 U.S.C. § 1681e(b);

(b) An award of actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) or 1681o(a)(1);

(c) An award of statutory damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

(d) An award of punitive damages, as allowed by the Court pursuant to 15 U.S.C. § 1681n(a)(2),

(e) Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) and § 1681o(a)(2); and

(f) Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and/or declaratory relief.

## VII. **JURY DEMAND**

Plaintiff hereby demands jury trial on all issues so triable.

RESPECTFULLY SUBMITTED this 8th day of February 2022.

**CHAMI LAW, PLLC**

By: */s/Tarek N. Chami*
Tarek N. Chami – MI# P76407
22000 Michigan Ave, Suite 200
Dearborn, MI 48124
T: (313) 444-5029
tarek@pricelawgroup.com

David A. Chami (AZ No. 027585)
**PRICE LAW GROUP, APC**
8245 N. 85th Way
Scottsdale, AZ 85258
T: (818) 600-5515
david@pricelawgroup.com

Syed Hussain, IL #6331378
**PRICE LAW GROUP, APC**
420 E Waterside Drive, #3004
Chicago, IL 60601
T: (818) 600-5535
F: (818) 600-5435
E: syed@pricelawgroup.com
*Attorneys for Plaintff*
*Darcus Conway*